SIMON v. STATE.

Opinion delivered September 26, 1921.

1.  GAMING—CONDUCTING GAMBLING HOUSE—ACCOMPLICES.—Under
    Crawford & Moses' Dig., § 2632, imposing a penalty on every
    person "who shall be interested, directly or indirectly, in run-
    ning any gambling house," the penalty is leveled only at the per-
    son who keeps or rather operates, or is "interested in the keep-
    ing or operating of a gambling house or place where gambling
    is carried on," and not against the patrons of such an establish-
    ment or the persons who pay for the privilege of gambling there-
    in and participate in card games played therein for money.

2.  CRIMINAL LAW — ACCOMPLICES — CORROBORATION — Under the
    statute requiring an accomplice to be corroborated, the test to
    determine whether or not one is an accomplice is, could the
    person so charged be convicted upon the evidence as a princi-
    pal or accessory before the fact, or an aider and abetter?

3.  CRIMINAL LAW—ACCOMPLICES.—In a prosecution for conducting
    a gambling house, persons who merely participated in games
    therein are not to be regarded as accomplices of the defend-
    ant.

Appeal from Garland Circuit Court; *Scott Wood,*
Judge; affirmed.

*Martin, Wootton & Martin* and *C. Floyd Huff,* for
appellant.

Players in a card game are accomplices. Crawford
& Moses' Digest, § 2308; 16 C. J. 670 to 672; 36 Ark. 126;
90 Ark. 460; 130 Ark. 353; 141 Ark. 421; 129 Pac. 78; 43
L. R. A. (N. S.) 546 and cases cited.

A conviction in a felony case cannot be had upon the
uncorroborated testimony of an accomplice. Crawford
& Moses' Digest, § 3181.

Whether or not a witness is an accomplice of the ac-
cused is a mixed question of law and fact. 51 Ark. 115;
63 Ark. 462; 111 Ark. 299. And defendant was entitled
to have the question submitted to the jury under proper
instructions. Appellant's requested instruction No. 3 on
the subject was refused by the court, which was error
under the following decisions: 50 Ark. 526; 64 Ark. 247;
130 Ark. 353; 128 Ark. 452.

In the actions of the State's witnesses there were all the necessary elements of standing by, aiding, abetting, assisting, advising and encouraging the appellant in the perpetration of the crime, to make them accomplices under § 2308, C. & M. Digest, and the necessary "affirmative act" suggested in 141 Ark. 421.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

Appellant's requested instruction No. 3 was properly refused. Participants in a card game are not accomplices. The test of whether or not a witness is an accomplice is, could he himself have been indicted for the offense, either as principal or accessory? 1 R. C. L. § 3, p. 157; Cyc. 445-6; 16 C. J. p. 671. The State's witnesses, by participating in the gambling being conducted, violated § 2639, C. & M. Digest, thereby committing a misdemeanor only. Sec. 3181, C. & M. Digest, requiring corroboration of testimony of accomplices, applies only in felony cases.

Mere knowledge that a crime is being committed cannot constitute one an accomplice, nor can the concealment of such knowledge. 1 R. C. L., Sec. 3, pgs. 157-8.

Where the facts are not disputed, and the acts and conduct of the witnesses admitted, the question then becomes one of law for the court to say whether or not those acts and facts make the witness an accomplice, and is not a jury question. 1 R. C. L., § 3, p. 158.

One who is permitted to play a game of chance upon the premises of another is not an accomplice, where the owner is prosecuted for permitting gambling. 6 Ky. L. Rep. 517; 6 Ky. L. Rep. 217; 43 Mont. 427; 117 Pac. 95. By analogy see 16 C. J. § 1388, p. 681; 41 Tex Cr. 358, 57 S. W. 850; 165 N. Y. S. 386; 16 C. J. note 24, p. 680; 155 Mass. 287, 29 N. E. 512; 203 N. Y. 73, 96 N. E. 362.

WOOD, J. The appellant was convicted under an indictment which charged that he "unlawfully and feloniously did keep, conduct and operate, and was inter-

ested directly and indirectly in keeping, conducting and operating a gambling house or place where gambling was carried on in a certain building on Central Avenue in the city of Hot Springs, Arkansas, and known as the Arkansas Cigar Store, and was interested directly and indirectly in keeping, conducting and operating said gambling house by furnishing money and other articles for the purpose of carrying on said gambling house, against the peace and dignity of the State of Arkansas.''

The facts are substantially as follows: The appellant rented a building in the city of Hot Springs from A. B. Gaines, paying as rent therefore the sum of $200 per month. The first floor was occupied as a cigar store, and its rental value was estimated at $125 per month. The proportion of the rental value of the upper rooms was estimated at $75 per month. The upper rooms had in them sixty or seventy chairs, pool tables, billiard tables, two or three round tables, desk, lounge, a kitchenette and a place with periodicals where one could sit down and read.

Among the witnesses who testified for the State were L. D. Cooper, Leon Dinkelspiel, Matt Picchi, Mose Klyman and E. N. Roth. Their testimony does not differ in essential particulars, and is to the effect that they had frequently been in appellant's place of business and had participated in card games played there for money. Each participant in the game of cards paid the sum of $6 for his seat at the table. Players did not pay for their checks when received. It was the custom of the place to have a settlement at periods more or less indefinite. No one was permitted to the rooms except invited guests. The company was select and the participants high-class business men. The $6 paid for the seat and the privilege of participating in the game also entitled the participant to refreshments such as sandwiches, soft drinks and other things to eat and drink. Usually the players would buy $100 worth of checks from which the appellant would deduct $6, which was the charge for the

privilege of participating in the games, and there was no additional charge for the other accessories mentioned above. These were furnished by the appellant free of charge. There was a charge of $1 a deck for the cards to those who participated in the game of poker. No charges were made for the cards used in bridge or whist. There were sometimes as many as eight people seated at a table participating in the game of poker and at different tables as many as twenty people playing poker at one time in separate games. The poker games were played for money. The largest loss that the witnesses had ever known any of the participants to sustain was from $100 to $150. The witnesses participating in the poker games testified that the $6 paid for the "seats" was for the purpose of enabling appellant to conduct the business there and to "keep it open and going."

The appellant requested the court to instruct the jury as follows:

"You are instructed that an accessory is one who stands by, aids, abets, assists, or who, not being present, hath advised and encouraged the perpetration of the crime. And if you find from the evidence in the case that the witnesses L. D. Cooper, Leon Dinkelspiel, Matt Cicchi, Mose Klyman and E. N. Roth, who have testified, contributed money to the defendant, in order to induce or enable him to conduct a gambling house, then each of them so contributing thereby became and was an accessory. And if you find that they are accessories or accomplices as above defined, then you are further instructed that the defendant can not be convicted on their testimony alone. Before one can be convicted on the testimony of an accomplice, there must be corroboration by other evidence, tending to connect the defendant with the commission of the offense. Nor can one accomplice corroborate another; but before the testimony of an accomplice can be considered by you at all as evidence of guilt, there must be other evidence before you, not given by an accomplice, which tends to connect the defendant

with the commission of the offense charged. And unless there be other evidence independent and apart from any given by one or more accomplices, tending independently of any matters testified to by such accomplices, one or more, to connect the defendant with the offense charged, you should find him not guilty."

The court refused the appellant's prayer, to which ruling the appellant duly excepted.

The only error of which the appellant complains here is predicated upon the ruling of the court in refusing the above prayer. There was no error in the ruling of the court. Section 2632, C. & M. Digest, provides as follows: "Every person who shall keep, conduct or operate, or who shall be interested directly or indirectly in keeping, conducting or operating a gambling house or place where gambling is carried on, * * * or who shall be interested directly or indirectly in running any gambling house, * * * either by furnishing money or other articles for the purpose of carrying on any gambling house, shall be deemed guilty of a felony, and on conviction thereof shall be confined in the State penitentiary for not less than one nor more than three years." Act March 11, 1913.

There is no testimony tending to prove that the witnesses for the State, named in the prayer for instruction, *supra*, were interested directly or indirectly in the gambling house kept, conducted or operated by the appellant, nor is there any testimony tending to prove that they furnished any money or other articles for the purpose of carrying on any gambling house. It occurs to us that the penalty of this statute is leveled only at the person who "keeps" or "operates," or is "interested in the keeping or operating of a gambling house or place where gambling is carried on," and not against the mere patrons of such an establishment, or the persons who paid for the privilege of gambling therein and who were participants in any card games that were played therein for money. Giving the testimony of all or any of the

witnesses for the State named in the above instruction its strongest probative force in favor of the appellant, it does not warrant the inference that any of these witnesses had any control over, or management of, or interest in, the house or place where the gambling was carried on. In the sense of the statute, they had no interest directly or indirectly in the running of the gambling house. While some of the witnesses say that the $6 paid by the participants in the poker games was for the purpose of enabling the appellant to "keep the place and run it," yet, when this language of the witness is taken in connection with their previous language, it is manifest that the meaning of the witnesses, and the only meaning of which their testimony is susceptible, is that they were paying $6 a seat whenever they desired to sit at the card tables and participate in the game of poker carried on in the gambling house or place maintained by the appellant; that this sum was paid for the privilege of indulging in the poker games and for the refreshments and other accessories mentioned by them incident thereto which the appellant furnished them in consideration of the charge specified.

"The test, generally applied to determine whether or not one is an accomplice, is, could the person so charged be convicted as a principal, or an accessory before the fact, or an aider and abetter upon the evidence? If a judgment of conviction could be sustained, then the person may be said to be an accomplice; but, unless a judgment of conviction could be had, he is not an accomplice." *Levering* v. *Commonwealth*, 132 Ky. 666-678, and other cases there cited. *State* v. *Gordon*, 105 Minn. 217-219; *State* v. *Durham*, 73 Minn. 150-165, 1 R. C. L. 157, and cases cited in note; 12 Cyc. 445-446. "In order for a witness to be an accomplice, he must not only be implicated in the crime itself, but the evidence must tend to show that he acted in concert with the party on trial and against whom he testified." 16 Corpus Juris 671. Now, when we lay the uncontroverted facts as set forth

above alongside these legal tests for determining who is an accomplice, the conclusion is irresistible that the witnesses for the State named in appellant's prayer for instruction were not the accomplices of the appellant in the crime of which he was convicted. If these witnesses had been indicted jointly or separately for maintaining a gambling house under the above statute, could they have been convicted under the undisputed evidence in this record? Cenrtainly not. They had no control, either directly or indirectly, over the house or place which the appellant maintained as a gambling house. They did not furnish him any money with which to run this house and only paid the fee or tax which he charged for the privilege of gambling and the services incident thereto, which appellant furnished them in consideration of such charge or fee. Appellant was not the agent or partner of these witnesses in the conduct or operation of the gambling house, and there was no concert of action among themselves or between any of them and appellant with reference to this matter.

As we view the record, the testimony is uncontroverted and susceptible to only one conclusion. Therefore there was no room for the submission of the issue to the jury as to whether or not the witnesses named were accomplices of the appellant. These witnesses, of course, under their own testimony, were guilty of the separate and independent offense of gaming under section 2639 of C. & M. Digest, and, as their testimony shows, they paid the appellant for the privilege of participating in games of cards at the gambling house kept and maintained by appellant. These witnesses were no more accomplices of the appellant in the crime of keeping and operating a gambling house than was the appellant their accomplice in the games of poker which they played when he was not a participant.

"The term 'accomplice' can not be used in a loose or popular sense so as to embrace one who has guilty knowledge, or is morally delinquent, or who was even an

admitted participant in a related, but distinct offense. To constitute one an accomplice, he must take some part, perform some act, or owe some duty to the person in danger that makes it incumbent on him to prevent the commission of the crime. Mere presence, acquiescence or silence, in the absence of a duty to act, is not enough, however reprehensible it may be, to constitute one an accomplice. The knowledge that a crime is being or is about to be committed can not be said to constitute one an accomplice. Nor can the concealment of knowledge, or the mere failure to inform the officers of the law when one has learned of the commission of a crime." 1 R. C. L., § 3, pp. 157, 158.

"Under the rule that an accomplice must unite in the commission of the crime and must be an associate therein, one participating in a gambling game operated by another in violation of a statute punishing one operating gambling games, is not an accomplice." *State* v. *Wakely,* 43 Mont. 427, 117 Pa. 95-99.

"In a prosecution for conducting a gambling game or place of business, persons who merely play in the game or at such place are not regarded as accomplices of the defendant." 16 Cor. Jur. 680.

The above excerpts from the texts are supported by the cases cited in the notes thereto. It follows that there is no error in the record, and the judgment must therefore be affirmed.

