Leon ODOM *v.* STATE of Arkansas

CR 75-200                                        533 S.W. 2d 514

Opinion delivered March 8, 1976

430

*William B. Blevins* and *Robert L. Pierce,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *B.J. McCoy,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. The appellant, a resident of Brinkley, was charged as an accessory before the fact in the robbery of the Mad Butcher grocery store at Brinkley. It was the State's theory that Odom assisted three other men, Embrey, Bruton, and Zappas, in planning the robbery. The other three actually committed the crime, with Odom receiving $400 as his share. The jury returned a verdict of guilty and imposed sentences of ten years for the robbery and eight years for the use of a firearm.

Inasmuch as there is one clear-cut reversible error, we confine our discussion to that point and such others as may recur upon a retrial. Embrey, one of the robbers, admitted his guilt and testified for the State. He said that when he return-

ed to Brinkley several weeks after the robbery to pay Odom, he left at Odom's house a suitcase containing clothing and some stolen blank Oklahoma car titles. Embrey testified that after his arrest he gave a federal special agent, Paul Darby, permission to pick up the suitcase. Darby testified that he did so, telling Mrs. Odom that he was Embrey's stepbrother.

Mrs. Odom testified for her husband, asserting his innocence. On cross-examination she denied having made any statement to Darby about the Oklahoma car titles. The court permitted the State to attack Mrs. Odom's credibility by means of Darby's rebuttal testimony that Mrs. Odom said to him that she thought Embrey had the car titles with him when he was arrested.

The court's ruling was erroneous. Embrey's possession of the titles at the time of his arrest was a collateral matter, in that the State could not have proved it as part of its case in chief. *Peters v. State,* 103 Ark. 119, 146 S.W. 491 (1912). It is firmly settled that a party cannot cross examine a witness about a collateral matter and then impeach him by proof of a contradictory statement. *Peters v. State, supra; Tullis v. State,* 162 Ark. 116, 257 S.W. 380 (1924). We certainly cannot say that the error was harmless. To the contrary, the prosecutor argued to the jury that Mrs. Odom had lied to Darby and that the rest of her testimony was therefore open to question.

Odom insists that the trial judge should have told the jury as a matter of law that Odom's 19-year-old stepson, Steve Nash, was an accomplice. Steve was living in the Odom home and testified that he heard Odom and the other men planning the robbery, which was to be brought off by tying up the store manager at his home and compelling him to reveal the combination to the safe. Steve knew the details of the plan. He had previously worked at the store and told the men where the safe was and how much money it might contain. He showed Embrey the store manager's house and went with Embrey to buy cord for tying up the manager. Steve had no part in the actual robbery, received none of its proceeds, and testified that he was afraid to report the crime to the police.

In our various definitions of an accomplice we have said

that he is one who participates in any manner in the criminality of the act (*Rhea* v. *State,* 226 Ark. 68, 288 S.W. 2d 34 [1956]) and that he is one who could have been indicted for the offense (*McClure* v. *State,* 214 Ark. 159, 215 S.W. 2d 524 [1948]) or convicted of it (*Havens* v. *State,* 217 Ark. 153, 228 S.W. 2d 1003 [1950]). That one knows that a crime is about to be committed does not necessarily make him an accomplice. *Simon* v. *State,* 149 Ark. 609, 233 S.W. 917 (1921). Nor does concealment of a crime for fear of one's own safety. *Melton* v. *State,* 43 Ark. 367 (1884).

In harmony with the general rule, the court should not instruct the jury that a certain witness is an accomplice if there is any dispute in the testimony upon that point. *Simms* v. *State,* 105 Ark. 16, 150 S.W. 113 (1912). Whether a witness is an accomplice is ordinarily a mixed question of law and fact, to be submitted to the jury. *Norris and Hamlett* v. *State,* 168 Ark. 151, 269 S.W. 46 (1925); *Rogers* v. *State,* 136 Ark. 161, 206 S.W. 152 (1918). Here a jury could readily find that Steve Nash was not an accomplice, in that he did not take part in any criminal act, that he supplied information that was readily available to anyone, and that fear kept him from reporting the crime. The court correctly refused to instruct the jury that Steve was an accomplice as a matter of law.

Odom argues that Embrey's suitcase and the Oklahoma titles were not admissible. Although we see no reason for the titles to play any part in a new trial, there was actually no error as the issues arose. The prosecutor took the position that he had to prove, on the one hand, Odom's activity in planning the crime and, on the other, the execution of the plan by others. The suitcase and titles were offered solely to corroborate Embrey's testimony about the crime. The court twice instructed the jury that the evidence was admitted only for that corroborative purpose. In both instances defense counsel were apparently satisfied with the instruction and made no other objection.

It is also argued now that the suitcase was inadmissible, because Darby obtained it by telling Mrs. Odom that he was Embrey's stepbrother. When a plain-clothes or undercover officer misrepresents his identity as a reasonable means of ap-

prehending a criminal, we do not think that the guilty person is in a position to complain unless the conduct should be prohibited, such as an entrapment. See *Peters* v. *State,* 248 Ark. 134, 450 S.W. 2d 276 (1970). Moreover, since Embrey authorized Darby to get the suitcase and it was used only to corroborate Embrey, we do not see that Odom's rights were violated. Similarly, he does not have standing to complain that a car belonging to one of the other three participants in the crime may have been searched in Missouri without a valid search warrant.

Reversed.