Louis Esteban Santiago, demandante, *v.* Marisol Rodríguez, demandada y recurrida, y Crowley Marine Services, Inc., promovida y peticionaria.

*Número:* CC-2002-185 *Resuelto:* 20 de mayo de 2004

*Carlos George*, abogado de la parte promovente y peticionaria; *Beatriz Vázquez*, abogado de la parte recurrida; *Sylvia Juarbe*, abogado de la parte demandante.

LA JUEZA PRESIDENTA SEÑORA NAVEIRA MERLY emitió la opinión del Tribunal.

## I

El 12 de mayo de 1998 se decretó el divorcio entre el Sr. Louis Esteban Santiago y la Sra. Marisol Rodríguez. Debido a su pobre estado de salud, a la señora Rodríguez se le asignó una pensión alimentaria de $1,000 mensuales a ser pagada en quincenas adelantadas de $500. Desde 1991, el señor Santiago prestó servicios a Crowley Maritime Corporation (Crowley-Matriz) a través de una subsidiaria en Puerto Rico llamada Crowley American Transport (Crowley-Puerto Rico) hasta el 1997, cuando fue transferido a Jacksonville, Florida, a trabajar con otra empresa afiliada, Crowley Marine Services (Crowley-Florida), lugar donde prestaba servicios al momento de la sentencia de divorcio. En abril de 1999 el señor Santiago notificó su renuncia al puesto que ocupaba en Crowley-Florida. Posteriormente, el 1ro de julio de 1999, comenzó a laborar en Venezuela con Crowley Marine Services de Venezuela, S.A. (Crowley-Venezuela), empresa también afiliada con Crowley-Puerto Rico y Crowley-Florida.

Con relación a la pensión alimentaria fijada, se emitió una orden de retención de ingreso del empleado-alimentante (orden de retención) y su correspondiente depósito en la Administración para el Sustento de Menores (A.S.U.M.E.). La orden de retención originalmente se dirigió a Crowley-Puerto Rico y posteriormente, el 19 de junio de 1998, se emitió una orden de retención enmendada y notificada a Crowley-Florida. La orden en contra de Crowley-Florida se diligenció a través del departamento de recursos humanos de Crowley-Puerto Rico.

Crowley Matriz, por conducto de su División o Departamento de Recursos Humanos y la utilización de memorandos corporativos internos, le indicó a Crowley-Florida que retuviera del salario del señor Santiago el pago correspon-

diente y, a través de Crowley-Puerto Rico, lo depositara en A.S.U.M.E, cumpliendo en esa forma con la orden de retención.

A partir del 30 de abril de 1999, fecha en que el señor Santiago dejó de prestar servicios en Crowley-Florida, no se volvió a recibir ningún otro pago de pensiones en A.S.U.M.E. a favor de la señora Rodríguez. Crowley-Florida le notificó a A.S.U.M.E., mediante Carta de 2 de julio de 1999, que el señor Santiago ya no trabajaba con ellos efectivo el 1ro de mayo de 1999, y el 6 de agosto de 1999 le notificó a la señora Rodríguez el nombre y la dirección del nuevo patrono del señor Santiago.

Ante esta situación, la señora Rodríguez solicitó al foro de instancia que encontrara incursos en desacato al señor Santiago y a Crowley-Florida por incumplimiento de la orden de retención enmendada. Cuando el foro de instancia dictó sentencia, la deuda en concepto de pensión alimentaria ascendía a $17,180. Este foro determinó que Crowley-Puerto Rico, Crowley-Florida y Crowley-Matriz eran "el verdadero patrono" y eran solidariamente responsables de las pensiones que dejaron de retener y remitir a A.S.U.M.E., por lo que les impuso su pago a estas empresas. Además, se les impuso una multa de $500 por incumplir algunas disposiciones de la Ley Orgánica de la Administración para el Sustento de Menores (Ley Orgánica), Ley Núm. 5 de 30 de diciembre de 1986 (8 L.P.R.A. sec. 501 *et seq.*).

Inconforme con el dictamen, Crowley-Florida acudió al Tribunal de Apelaciones. Ese foro modificó la sentencia recurrida y ordenó a Crowley-Florida pagar el monto de las cantidades por concepto de atrasos en la pensión alimentaria, según surgía del Certificado de Estado de Cuenta que emitió A.S.U.M.E al momento de hacer la liquidación al señor Santiago. Además, se confirmó la multa impuesta y se dejó sin efecto cualquier obligación que impuso la sentencia a cualesquiera otras empresas afiliadas de Crowley-

Matriz, Crowley-Florida, Crowley-Puerto Rico y Crowley-Venezuela, a menos que éstas estuvieran debidamente ante la jurisdicción *in personam* del Tribunal de Primera Instancia. Inconforme con esa determinación, la peticionaria acude ante nos mediante un recurso de *certiorari*. En síntesis, debemos resolver si se puede hacer responsable a un patrono de pagar las cantidades por concepto de atrasos en la pensión alimentaria, según surgía del Certificado de Estado de Cuenta al momento de hacer la liquidación, a pesar que de la orden de retención no surgía ese mandato. Expedimos el auto solicitado y, con el beneficio de los argumentos de las partes, procedemos a resolver.

## II

El 20 de diciembre de 1997 la Asamblea Legislativa aprobó la Ley Núm. 180 para adoptar en Puerto Rico la *Uniform Interstate Family Support Act* (U.I.F.S.A.), con el nombre de Ley Interestatal Uniforme de Alimentos entre Parientes (L.I.U.A.P.), con el propósito de que pudiéramos participar de los fondos federales para los Programas de Sustento de Menores y Asistencia Pública a familias necesitadas asignados a los estados que adopten la mencionada ley. La L.I.U.A.P. es un estatuto modelo que el Gobierno federal requiere que sea adoptado por todos los estados y territorios de Estados Unidos con el fin de establecer una uniformidad al fijar y ejecutar las obligaciones alimentarias entre personas que residen en diferentes estados.[1] Esta ley tuvo el efecto de enmendar la Ley Orgánica que procura que los padres o las personas legalmente responsables contribuyan a la manutención de sus hijos o dependientes mediante el fortalecimiento de los sistemas y la agilización de los procedimientos administrati-

---

[1] Véase Exposición de Motivos de la Ley Núm. 180 de 20 de diciembre de 1997, (Parte 2) Leyes de Puerto Rico 837.

vos y judiciales para la determinación, recaudación y distribución de las pensiones alimentarias.

■ El Art. 24 de la Ley Orgánica, 8 L.P.R.A. sec. 523, establece la retención de ingresos como una medida para asegurar la efectividad del pago de pensiones alimentarias. El inciso (1)(a) del mencionado artículo provee, en lo pertinente

(1)(a) El tribunal o el administrador, conforme a las disposiciones de este capítulo, al momento de fijar o modificar una pensión alimentaria, emitirá inmediatamente una orden fijando o modificando la pensión alimentaria y requiriendo al patrono del alimentante o a cualquier persona que sea pagador con relación al alimentante, conforme se define en la sec. 501 de este título, que retenga o descuente en el origen, de los ingresos del alimentante, independientemente de si existen o no atrasos en el pago de pensión alimentaria, las cantidades señaladas en la orden para satisfacer el pago de la pensión, y de cualquier deuda por razón de pensiones vencidas y no pagadas. 8 L.P.R.A. sec. 523(1)(a).

■ La orden de retención de ingresos es fundamental para el aseguramiento y cobro de deuda por alimentos. Según Sarah Torres-Peralta, en su obra *La Ley Especial de Sustento de Menores de 1994 y el derecho de alimentos en Puerto Rico*, ed. especial, San Juan, Pubs. STP, 1997, pág. 11.11, "es quizás el medio más efectivo disponible para hacer cumplir las obligaciones alimentarias". Mediante este mecanismo, todo alimentante que sea empleado o reciba alguna remuneración adicional de un pagador se podrá mantener al día en el cumplimiento de sus obligaciones alimentarias.

■ En cuanto a las órdenes de retención para patronos, la Ley Orgánica dispone que el Secretario del tribunal o el Administrador, según sea el caso, notificará prontamente al patrono o al pagador del alimentante deudor, y al alimentista, la orden de retención de ingresos, señalándose su obligación de retener o descontar en el origen de los ingresos del alimentante las cantidades señaladas en la

orden para satisfacer el pago de la pensión y de cualquier deuda por razón de pensiones vencidas y no pagadas. 8 L.P.R.A. sec. 523(5). Estas órdenes son efectivas desde su notificación y continúan en vigor mientras subsista la obligación de prestar alimentos o hasta que el tribunal o Administrador la suspenda o deje sin efecto, modifique o revoque. 8 L.P.R.A. sec. 523(5)(a).

En el caso de autos, la parte peticionaria sostiene que no estaba obligada a solicitar el Certificado de Estado de Cuenta por cuanto ese requerimiento no surgía expresamente de la orden de retención. De esto concluye que no tenía que efectuar una retención de la liquidación por terminar en un empleo, o pagar las cantidades por concepto de atraso en la pensión alimentaria, según surgía de la certificación al momento de hacer la liquidación. No le asiste razón.

El inciso (9) de la referida sección establece lo siguiente en cuanto al contenido de la orden de retención:

(9) La notificación al patrono o pagador comprenderá los siguientes extremos:

(a) El nombre y número de seguro social del alimentante, así como cualquier otro número o dato para la identificación de éste, la cantidad a ser retenida del sueldo o salario mensual del deudor alimentante para el pago de la pensión corriente de cada mes;

(b) la cantidad a ser retenida para el pago de los atrasos, si los hubiera, y fecha en que cesará esta retención;

(c) la cantidad máxima que el pagador o patrono podrá retener del ingreso del alimentante para sufragar el costo de cada retención que realice, cuando y conforme lo determine el administrador mediante reglamento;

(d) aviso de sus obligaciones y responsabilidades como patrono o pagador bajo este capítulo, así como los términos y procedimientos, conforme se dispone en los incisos (6) al (8) y (10) al (14) de esta sección, respectivamente;

(e) *aviso de su obligación como patrono o pagador de continuar haciendo las deducciones o retenciones hasta que se notifique lo contrario, y*

(f) aviso de que deberá notificar al tribunal o a la administración, según el caso, dentro de los treinta (30) días siguientes a la terminación de empleo de los alimentantes o a la ter-

minación de la obligación de pagar al alimentante, la ocurrencia de este hecho en unión a la última dirección conocida de éste, así como también el nombre y dirección del nuevo patrono o pagador, de conocerlos.

*(g) Cuando el alimentante termina su empleo, y es acreedor de cualesquiera cantidades por concepto de liquidación, el patrono o pagador deberá gestionar con el Administrador un Certificado de Estado de Cuenta. En el mismo se certificará cualquier atraso de más de un mes sin pagar la pensión o el plan de pagos establecido. De existir atrasos, se descontará de las cantidades a ser entregadas al alimentante por concepto de liquidación, aquélla que corresponda para pagar los atrasos y se le remitirá al administrador.* (Énfasis suplido.) 8 L.P.R.A. sec. 523(9).

Aunque la orden de retención expedida no dispone expresamente la obligación de Crowley-Florida de solicitar un certificado de cuenta, la orden sí expresa:

Si dejare intencionalmente de retener o remitir el ingreso retenido conforme a esta solicitud o *si incumpliere con cualesquiera de los deberes impuestos por Ley,* a solicitud del acreedor o del Administrador-ASUME, el Tribunal previa notificación y celebración de vista, dictará sentencia por el total de la cantidad que haya dejado de retener y remitir, y ordenará la ejecución de ésta sobre la propiedad del patrono o pagador, excepto en el caso en que el patrono o pagador sea un municipio, departamento o agencia del Estado Libre Asociado de Puerto Rico. (Énfasis suplido.)

▆▆▆ De la citada disposición legal se desprende la obligación del patrono de cumplir con el mandato de la Ley Orgánica, 8 L.P.R.A. sec. 502, que, como expresáramos anteriormente, se creó para fortalecer y agilizar los procedimientos de recaudación de pensiones alimentarias. En la declaración de política pública de esa ley se estableció que sus disposiciones se interpretarán liberalmente a favor de los mejores intereses del menor o alimentista que necesita alimento. Íd. Es clara la intención del legislador de proveer nuevos mecanismos que sanen el grave problema de incumplimiento de la obligación alimentaria hacia los hijos o dependientes. Aunque la mejor práctica en los casos en que

se expidan órdenes de retención de ingresos es detallar las obligaciones del patrono mediante mandatos claros y específicos, no podemos obviar que es norma fundamental en nuestro ordenamiento jurídico que la ignorancia de las leyes no excusa de su cumplimiento. 31 L.P.R.A. sec. 2; *Cabassa v. Bravo*, 21 D.P.R. 185, 187 (1914). Dicho esto, es forzoso concluir que Crowley-Florida debió solicitar de A.S.U.M.E. un Certificado de Estado de Cuenta y proceder a retener y remitir la cantidad en atrasos en pensión alimentaria de la cantidad liquidada, aunque no surge tal requisito de la orden de retención.

■ La obligación de honrar una orden de retención, una vez se ha notificado, recae sobre el patrono. 8 L.P.R.A. sec. 523(10) y (13). Cuando un patrono incumple con el deber de retener o remitir el ingreso retenido conforme a una orden de retención, o no cumple con los deberes que le impone la Ley Orgánica, el tribunal o el Administrador dictará una sentencia u orden por el total de la cantidad que el pagador o patrono dejó de retener, más multas, gastos e intereses. Además, se ordenará la ejecución de la cantidad adeudada sobre la propiedad del patrono.[2]

■ Tanto la U.I.F.S.A. como la L.I.U.A.P. establecen un sistema de una sola orden, el cual se apoya en el principio de jurisdicción continua y exclusiva del tribunal que emite una orden de pensión alimentaria o una determinación de filiación. Bajo la U.I.F.S.A., el principio de jurisdicción continua y exclusiva pretende, en la medida de lo posible, reconocer que sólo una orden de pensión alimentaria válida puede estar vigente en un momento dado. *Aponte v. Barbosa Dieppa*, 146 D.P.R. 558, 571 (1998).

A esos efectos, la U.I.F.S.A. establece lo siguiente:

(a) Upon receipt of an income-withholding order, the obligor's

---

[2] Excepto en el caso en que el pagador o patrono sea un municipio, departamento o agencia del Estado Libre Asociado de Puerto Rico.

employer shall immediately provide a copy of the order to the obligor.

(b) The employer shall treat an income-withholding order issued in another State which appears regular on its face as if it had been issued by a tribunal of this State.

(c) Except as otherwise provided in subsection (d) and Section 503, the employer shall withhold and distribute the funds as directed in the withholding order by complying with terms of the order which specify:

(1) the duration and amount of periodic payments of current child-support, stated as a sum certain;

(2) the person designated to receive payments and the address to which the payments are to be forwarded;

(3) medical support, whether in the form of periodic cash payment, stated as a sum certain, or ordering the obligor to provide health insurance coverage for the child under a policy available through the obligor's employment;

(4) the amount of periodic payments of fees and costs for a support enforcement agency, the issuing tribunal, and the obligee's attorney, stated as sums certain; and

(5) the amount of periodic payments of arrearages and interest on arrearages, stated as sums certain.

(d) An employer shall comply with the law of the State of the obligor's principal place of employment for withholding from income with respect to:

(1) the employer's fee for processing an income-withholding order;

(2) the maximum amount permitted to be withheld from the obligor's income; and

(3) the times within which the employer must implement the withholding order and forward the child-support payment.

9 (Parte B) U.L.A. sec. 502.

■ De la referida disposición legal se deduce el requerimiento de la notificación directa de la orden de retención al patrono en otro estado sin necesidad de iniciar una acción en el estado donde se ubica el patrono. Es decir, el patrono debe cumplir con la orden de retención de otro estado como si se tratara de una orden emitida por el estado en el cual está ubicado.

La peticionaria señala, además, que erró el Tribunal de Apelaciones al determinar que ésta estaba obligada a pagar las cantidades por concepto de atrasos, cuando no

surge del récord cuál fue el pago por liquidación, si alguno, emitido a favor del señor Santiago.[3]

■■ El Art. 24 de la Ley Orgánica, 8 L.P.R.A. 523(9)(g), establece que se le descontarán al alimentante los atrasos existentes al momento de cesar en el empleo de la cantidad a la que sea acreedor por concepto de liquidación. Por otro lado, el mencionado inciso (13) del citado artículo hace responsable al patrono por las cantidades dejadas de remitir o retener y autoriza al tribunal o Administrador, previa notificación al patrono o pagador, y notificación de vista, a dictar sentencia u orden por el *total de las cantidades que el patrono o pagador dejó de remitir o retener.* 8 L.P.R.A. sec. 523(13).

En el caso de autos existen dos momentos claves para la determinación de la cuantía de atraso en la pensión alimentaria: el 30 de abril de 1999 (fecha en que el señor Santiago renunció) y la fecha en que se liquidaron los beneficios (de ser diferente a la anterior). Para determinar con exactitud a cuánto ascendía el atraso en pensión alimentaria y la obligación de retención al momento de traslado y la liquidación de beneficios, Crowley-Florida debe informar cuándo se liquidaron los beneficios y a cuánto ascendió la liquidación, y debe gestionar el Certificado de Estado de Cuenta correspondiente a la fecha de liquidación. De la cantidad liquidada, el patrono está obligado a retener la suma adeudada por pensión alimentaria; por ende, es ésta la cantidad por la que Crowley-Florida tiene que responder. La responsabilidad del patrono estará limitada a la cantidad liquidada, independientemente de que la suma adeudada sea mayor que esa cantidad.

---

[3] La peticionaria alega que bajo las cantidades de liquidación no se puede considerar cualquier cantidad recibida por concepto de plan de pensión conforme al *Employee Retirement Income Security Act,* 29 U.S.C. sec. 1001 *et seq.* (E.R.I.S.A.). En los autos no consta copia del plan de retiro y el foro de instancia no hizo una determinación de hechos respecto a la aplicabilidad de E.R.I.S.A.

## III

Por los motivos antes expuestos, *modificamos el dictamen del Tribunal de Apelaciones a los efectos de ordenar a Crowley-Florida informar cuándo se liquidaron los beneficios, a cuánto ascendió la liquidación y gestionar el Certificado de Estado de Cuenta correspondiente a la fecha de liquidación. Devolvemos el caso al foro de instancia para la continuación de los procedimientos a tenor con lo aquí resuelto.*

El Juez Asociado Señor Rebollo López no intervino. El Juez Asociado Señor Hernández Denton disintió sin opinión escrita. El Juez Asociado Señor Corrada Del Río se inhibió.